1          **UNITED STATES DISTRICT COURT**
           **SOUTHERN DISTRICT OF TEXAS**
2                **GALVESTON DIVISION**

3
     **UNITED STATES OF AMERICA**      §    **3:19-CR-00023-1**
4                                      §
     **V.**                           §    **9:08 A.M. TO 11:16 A.M.**
5                                      §
     **JAKE DELAHNEY TAYLOR**          §    **JANUARY 20, 2022**
6
                          **BENCH TRIAL**
7         **BEFORE THE HONORABLE JEFFREY V. BROWN**
                     **Volume 1 of 1 Volume**
8

9    **APPEARANCES:**

10   **FOR THE UNITED STATES OF AMERICA:**
     Ms. Kimberly Ann Bulger Leo
11   Sherin Susan Daniel
     United States Attorney's Office
12   1000 Louisiana
     Suite 2300
13   Houston, Texas 77002
     (713) 567-9000
14
     **FOR THE DEFENDANT, JAKE DELAHNEY TAYLOR:**
15   Mr. Mark William Bennett
     Bennett & Bennett
16   917 Franklin
     Suite 400
17   Houston, Texas 77002
     (713) 224-1747
18
     **ALSO IN ATTENDANCE:**
19   Mr. Jake Delahney Taylor
     Ms. Michelle Kimpson
20   Agent Cecil Arnold
     Ms. Lashaunda Blake
21
     Court Reporter:
22   Laura Wells, RPR, RMR, CRR
     601 Rosenberg, Suite 615
23   Galveston, Texas  77550
     (409) 763-7817
24
     Proceedings recorded by mechanical stenography.
25   Transcript produced by computer-assisted transcription.

2

<pre>
 1                         VOLUME 1
                        (Bench Trial)
 2                                                        Page
     January 20, 2022
 3
     Announcements...................................      4
 4   Re-arraignment..................................      9
     Stipulation of Evidence.........................     19
 5   Displayed Government's Exhibit Number 8A........     40
     Displayed Government's Exhibit Number 8B........     41
 6   Displayed Government's Exhibit Number 9A1.......     42
     Displayed Government's Exhibit Number 9A2.......     42
 7   Displayed Government's Exhibit Number 9B1.......     43
     Displayed Government's Exhibit Number 9B2.......     44
 8   Displayed Government's Exhibit Number 9B3.......     44
     Displayed Government's Exhibit Number 9B4.......     44
 9   Displayed Government's Exhibit Number 9B5.......     44
     Displayed Government's Exhibit Number 9B6.......     46
10   Displayed Government's Exhibit Number 9B7.......     47
     Displayed Government's Exhibit Number 9B8.......     49
11   Displayed Government's Exhibit Number 9B9.......     50
     Displayed Government's Exhibit Number 9B10......     51
12   Displayed Government's Exhibit Number 9B11......     53
     Displayed Government's Exhibit Number 9C........     55
13   Displayed Government's Exhibit Number 19B.......     57
     Displayed Government's Exhibit Number 19C.......     57
14   Government Rests................................     60
     Defendant's Motion for Acquittal................     60
15   Ruling of Court.................................     60
     Defendant Rests.................................     60
16   Closing Statement by the Government.............     60
     Closing Statement by the Defendant..............     75
17   Rebuttal Closing Statement by the Government....     76
     Ruling of Court.................................     76
18   Reporter's Certificate..........................     80

19                        ALPHABETICAL

20   WITNESSES                                          Page

21   DETECTIVE JAMES STATON
          Direct Examination by Ms. Leo                   32
22

23

24

25


                 Laura Wells, RPR, RMR, CRR, RDR
</pre>

1                              **EXHIBIT INDEX**

2       **GOVERNMENT EXHIBITS**

3       **EXHIBIT NUMBER**                    **OFFERED**     **ADMITTED**

4       Government's Exhibit              18
        Numbers 1 through 19
5       Government's Exhibit                              18
        Numbers 1 through 19
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               **PROCEEDINGS**

2           **(Call to order of the Court.)**

3          THE COURT:  Good morning.  You may take your

4  seats.

09:08:14   5      All right.  One case on the Court's docket this

6  morning.  It is a criminal trial in Cause

7  Number 3:19-CR-23, the United States of America v. Jake

8  Delahney Taylor.

9      Will the attorneys make their appearances, please.

09:08:32  10          MS. LEO:  Good morning, Your Honor.  Kimberly Leo

11  and Sherin Daniel on behalf of the United States.

12          THE COURT:  Good morning.

13          MR. BENNETT:  Good morning, Your Honor.  Mark

14  Bennett for Mr. Taylor, who is present; and I'm assisted

09:08:43  15  today by Ms. Kimpson, who is a Thurgood Marshall

16  third-year law student.

17          THE COURT:  Okay.  Great.  Great.  Good to have

18  you all here, too.

19      Is the government ready for trial?

09:08:52  20          MS. LEO:  Yes, Your Honor.

21          THE COURT:  Is the defense ready for trial?

22          MR. BENNETT:  We are ready, Your Honor.

23          THE COURT:  Let the record reflect that the

24  defendant is in the courtroom.

09:08:56  25      It is the Court's understanding that a jury trial has

1  been waived in this case.

2         MR. BENNETT:  Correct, Your Honor.

3         THE COURT:  And we're going to go forward on a

4  stipulation of facts?

09:09:13  5         MR. BENNETT:  Yes, Your Honor.

6         THE COURT:  Which have been submitted to the

7  Court, and I have reviewed those.

8         MR. BENNETT:  The government is also going to

9  proffer -- to offer a witness to testify, I think, to

09:09:25  10  contextualize, I would say, some of the things for the

11  Court, though.  I don't -- you know, just so that the

12  Court sort of sees how the morning is going to go.  It's

13  not just the stipulation.  The government is also going to

14  put on a witness.

09:09:38  15         THE COURT:  Right.  I understood that to be the

16  case.

17         MR. BENNETT:  Okay.

18         THE COURT:  So, we need to -- we need to put on

19  that witness, hear argument from y'all; and I know I have

09:09:48  20  a brief from you, Mr. Bennett.

21     What else do we need to do today?  I mean, that's

22  going to be it, I would think.

23         MS. LEO:  Yes, Your Honor.  Your Honor, the

24  government would also be introducing all of our exhibits

09:10:01  25  into evidence for the Court's consideration as well.

1        THE COURT:  Sure.

2        MS. LEO:  But I think that's it.  And for the

3   Court's information, the defendant was initially going to

4   be entering a guilty plea but for that case that came out

09:10:13   5   that the defense cites in their motion, the *United States*

6   *v. Hillie*.

7        So I think that this is definitely a situation where

8   the defendant was willing to accept responsibility, but

9   now there is an issue in regards to what they believe is

09:10:31   10   -- they have this argument, and they want to preserve that

11   for a possible appeal.

12        THE COURT:  Okay.  Is that an accurate

13   reflection, Mr. Bennett?

14        MR. BENNETT:  That is.  We don't have any formal

09:10:43   15   agreement on acceptance of responsibility, of course,

16   because that is the Court's decision.  But my

17   understanding is the government doesn't oppose it; and at

18   the end of the day, we're going to be asking for that.

19        As far as the Court's question, however, I think that

09:10:52   20   for today that's it.  I think the government puts on their

21   case.  No objection.  The government argues their side of

22   it.  If the Court would like me to reiterate what is in

23   the brief, I'll reiterate the brief.  Otherwise, I'll just

24   rely on the Court to read the brief because it really is

09:11:11   25   just an interesting legal question.

7

```
 1              THE COURT:  Yeah.  Yeah.  It is.  Okay.  Well,
 2    that sounds simple enough.  I think we can get started.
 3    If y'all want to make a quick opening statement, you may.
 4    Otherwise, you may call your first witness or introduce
 5    your exhibits or however you want to get your case
 6    started.
 7              MS. LEO:  Your Honor, I think at this time if we
 8    could first formally go ahead and introduce all of our
 9    exhibits and have them offered into evidence.
10              MR. BENNETT:  Do we need to arraign Mr. Taylor?
11    He is pleading guilty to Counts Three and Four.
12              THE COURT:  Okay.
13              MR. BENNETT:  It's four counts.  The legal
14    question is only on Counts One and Two.  Mr. Taylor is
15    pleading guilty to Counts Three and Four.
16              MS. LEO:  That is right.  Defense counsel told me
17    that this morning.  I think maybe that would probably be
18    better if the Court could re-arraign him first on those
19    two counts just to get that out of the way.
20        We could do a quick factual basis in regards to that
21    because that is part of the stipulation that we have, and
22    we do have the elements because that is -- we have the
23    jury instructions, and I believe we have the range of
24    punishment.
25        So if the Court -- I know that we haven't formally
```

1  given all that information to the Court, but we probably

2  could do that.

3       MR. BENNETT:  This is new territory for all the

4  lawyers, I think, Judge, to have a bench trial with

09:12:34  5  stipulated facts.  I have never -- in 26 years, I have

6  never done this.

7       MS. LEO:  Neither have I.

8       THE COURT:  It's a first for me, too.

9       MR. BENNETT:  So I think if the Court has a

09:12:43  10  preference, we'll follow the Court's preference.  The only

11  reason for a guilty plea is just to make sure that it's

12  obvious that he is pleading guilty, and I think I can just

13  say he is not contesting.  He is not even contesting the

14  law on Counts Three and Four.  It is just on Counts One

09:13:01  15  and Two, and we can proceed with arraignment or without.

16       THE COURT:  Okay.  I can quickly re-arraign him,

17  and we'll do -- I mean, he won't be waiving -- he won't

18  be -- this won't be a waiver of his right to not have to

19  testify at trial.  It will just be the testimony that I

09:13:31  20  have to take to get him re-arraigned, if that works for

21  y'all.

22       MS. LEO:  Yes, Your Honor.

23       MR. BENNETT:  Yes, Your Honor.

24       MS. LEO:  Yes.  That was part of the stipulations

09:13:41  25  we discussed, what was found on his devices and what he

did in regards to the destruction, as well as the

possession of child pornography and what we'll call the

regular child pornography not dealing with Minor Victim 1.

MR. BENNETT:  The undisputed child pornography.

And now that I think about it a little bit more, maybe

the answer is to re-arraign and let him plead guilty to

Counts Three and Four and not guilty to Counts One and Two

and then treat the trial evidence as the factual basis.

MS. LEO:  That -- we're introducing -- with our

exhibits they do contain all the evidence for Counts Three

and Four, as well.  So that would work.  And the

stipulation contains the factual basis, which he agreed

to.  So that would work, as well.  I think whatever the

Court wishes to do.

THE COURT:  Okay.  If I could get the information

on what Counts Three and Four are and what the range of

punishment is on those; and if we can't do that right

away, we could probably do that just before we leave here

today.

MR. BENNETT:  Okay.

THE COURT:  Unless you have it right at hand.

MS. LEO:  Your Honor, we do.

In regard to Count Three, the possession of child

pornography, the range of punishment is up to ten years

imprisonment, a $250,000 fine, five years to life

1  supervised release, a $100 special assessment, a $5,000

2  special assessment under the JTVA, mandatory restitution,

3  and I believe up to a $17,000 special assessment under the

4  AVAA.

09:15:43  5      And in regards to Count Four, which is the

6  destruction, the destruction of property charge, the range

7  of punishment is a term of imprisonment of up to five

8  years and a fine of up to $250,000 and a $100 special

9  assessment with supervised release of up to three years.

09:16:15  10          THE COURT:  Okay.  Mr. Taylor, if you could stand

11  up, I'll swear you in real quick.

12          THE DEFENDANT:  (Complying.)

13          THE COURT:  You do solemnly swear that the

14  testimony you are going to give in the case that is now

09:16:24  15  going to be heard is the truth, the whole truth and

16  nothing but the truth so help you God?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Mr. Taylor, I understand that you

19  seek to enter a guilty plea this morning to Counts Three

09:16:36  20  and Four against you in the indictment?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And go to trial on Counts One and

23  Two?

24          THE DEFENDANT:  Yes, sir.

09:16:44  25          THE COURT:  Okay.  Before I can accept your

1    guilty plea to Counts Three and Four, I need to make sure

2    that you understand the rights that you are giving up by

3    entering that guilty plea.

4        You understand that you are under oath and that if you

09:16:59    5    answer any of the questions I ask you falsely, you could

6    be subject to a later prosecution for perjury or making a

7    false statement?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  What is your full name?

09:17:10    10           THE DEFENDANT:  Jake Delahney Taylor.

11           THE COURT:  And how old are you?

12           THE DEFENDANT:  37.

13           THE COURT:  All right.  Have you been treated

14   recently for any mental illness or addiction to narcotic

09:17:25    15   drugs?

16           THE DEFENDANT:  No, sir.

17           THE COURT:  Are you currently under the influence

18   of any drug or medication or alcoholic beverage?

19           THE DEFENDANT:  No, sir.

09:17:31    20           THE COURT:  Have you had time to discuss this

21   case with your attorney, Mr. Bennett?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Are you satisfied with his

24   performance as your attorney?

09:17:39    25           THE DEFENDANT:  Yes, sir.

1    THE COURT:  Mr. Bennett, have you had enough time

2  to discuss the law and facts of your client's case with

3  him?

4    MR. BENNETT:  Yes, Your Honor.

09:17:48    5    THE COURT:  Are you confident that he understands

6  the charges against him and the range of punishment that

7  he faces?

8    MR. BENNETT:  Yes, Your Honor.

9    THE COURT:  He has been able to cooperate with

09:17:57   10  you in every respect?

11    MR. BENNETT:  Very much so, Your Honor.

12    THE COURT:  And you believe he is competent to

13  enter into this plea?

14    MR. BENNETT:  Absolutely, Your Honor.

09:18:04   15    THE COURT:  The Court finds that Mr. Taylor

16  knowingly, voluntarily, intelligently and with the advice

17  of counsel seeks to enter a guilty plea to Counts Three

18  and Four.

19    Mr. Taylor, do you understand that you have the right

09:18:14   20  to plead not guilty to any offense charged against you?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  And that if you were to plead not

23  guilty, you would have -- to these two counts, you would

24  have a right to trial by jury on these counts?

09:18:26   25    THE DEFENDANT:  Yes, sir.

1    THE COURT:  And that at that trial you would not

2  have to prove your innocence but, instead, the burden

3  would be on the government to prove your guilt beyond a

4  reasonable doubt?

09:18:33    5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  And you understand that you would

7  have the right to counsel for your defense at that trial,

8  the right to cross-examine witnesses, the right to compel

9  witnesses to testify on your behalf, and the right to

09:18:44   10  decline to testify yourself in your defense?

11    THE DEFENDANT:  Yes, sir.

12    THE COURT:  And at that trial you could not be

13  convicted unless every member of the jury were to find you

14  guilty beyond a reasonable doubt?

09:18:57   15    THE DEFENDANT:  Yes, sir.

16    THE COURT:  And do you understand that by

17  entering a guilty plea to Counts Three and Four this

18  morning, you will be -- there will be no trial?  You will

19  have given up your right to a trial, as well as the other

09:19:09   20  rights associated with a trial that I have just described?

21    THE DEFENDANT:  Yes, sir, Your Honor.

22    THE COURT:  And do you understand that by

23  entering a guilty plea to these two counts this morning,

24  you are giving up the right to make a number of arguments

09:19:20   25  later on to try to get your conviction set aside or your

1  sentence set aside or reduced, and those are arguments

2  that you might have been able to make if you had gone to

3  trial and been convicted?

4      THE DEFENDANT:  Yes, sir.

09:19:33  5      THE COURT:  Do you understand that the offenses

6  that you are pleading guilty to this morning are felony

7  offenses and that if the judge accepts -- if the Court

8  accepts your plea, you will be adjudged guilty of a

9  felony, which means that you may have given up your right

09:19:49  10  to hold public office, to vote, or to possess a firearm?

11      THE DEFENDANT:  Yes, sir.

12      THE COURT:  Do you understand that parole from

13  federal prison -- there is no parole from federal prison;

14  and that if you are sentenced to prison, you will not be

09:20:03  15  released on parole?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  You have had the charges in the

18  indictment explained to you?

19      THE DEFENDANT:  Yes, sir.

09:20:15  20      THE COURT:  You have been able to go over them

21  with Mr. Bennett?

22      THE DEFENDANT:  Yes, sir.

23      THE COURT:  And you understand that Count Three

24  is possession of child pornography?

09:20:22  25      THE DEFENDANT:  Yes, sir.

1          THE COURT:  And Count Four is destruction of

2    property?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  You understand that when it comes

09:20:34    5    time to sentence you, there are several factors that I can

6    take into account:  the details of your conviction, your

7    prior criminal history, if any?  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And, also, I can take into account

09:20:46   10    what the law refers to as relevant conduct, and "relevant

11    conduct" is defined as conduct in the same course and

12    scheme or in preparation for the conduct in the count of

13    conviction.  And taking into account relevant conduct

14    could make your sentencing range higher and, therefore,

09:21:01   15    mean that your sentence is more severe than you

16    anticipate.

17       Do you understand that, too?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  That may be information the

09:21:07   20    government doesn't know about today and is information

21    that is revealed in the presentence investigation that

22    probation will do after this, after today?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  All right.  Ms. Leo went over a few

09:21:25   25    minutes ago the range of punishment that you face for

1  Count Three and Count Four.  Did you hear what she had to

2  say?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And do you understand that that is

09:21:34  5  the range of punishment that you face?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And do you understand the Court has

8  discretion to sentence you anywhere within those ranges?

9          THE DEFENDANT:  Yes, sir.

09:21:52  10          THE COURT:  All right.  If we are going to do the

11  factual basis, it's just going to be part of the evidence

12  that gets presented in the case as we go forward, part of

13  the stipulation and whatever other evidence the Court

14  receives?

09:22:05  15          MS. LEO:  Yes, Your Honor.

16          THE COURT:  Okay.

17     Mr. Taylor, have you been able to review the

18  stipulation of evidence that you and the government have

19  submitted in this case?

09:22:18  20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And all of the facts in that

22  stipulation of evidence are true and correct?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Okay.  And how do you plead to the

09:22:28  25  charge against you in Counts Three and Four?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  All right.  It is the finding of the

3     Court in the case of the United States v. Jake Delahney

4     Taylor that the defendant is fully competent and capable

09:22:40    5     of entering an informed plea, that the defendant is aware

6     of the nature of the charge and the consequences of the

7     plea and that the plea of guilty is a knowing and

8     voluntary plea supported by an independent basis in fact

9     containing each of the essential elements of the offense.

09:22:54   10     The plea is therefore accepted, and the defendant is now

11     adjudged guilty of Counts Three and Four.

12          All right.  In y'all's opinion, does that cover that?

13          MR. BENNETT:  I think it does, Your Honor.

14          MS. LEO:  Yes, Your Honor.

09:23:19   15          THE COURT:  Well, then, Mr. Taylor, you may take

16     your seat.

17          And the government may proceed with its case on Counts

18     One and Two.

19          MS. LEO:  Yes, Your Honor.  Your Honor, at this

09:23:27   20     time the government moves to introduce all of our exhibits

21     into evidence.

22          MR. BENNETT:  No objection, Your Honor.

23          THE COURT:  Okay.  And those are -- can you, for

24     the record, Exhibits 1 through what?

09:23:38   25          MS. LEO:  Yes, Your Honor.  They are Government's

1    Exhibits 1 through 19, and we had filed this on

2    January 20th.

3         (Government's Exhibit Numbers 1 through 19 offered

4    into evidence.)

09:23:49    5         MR. BENNETT:  "This" being the exhibit list?

6         MS. LEO:  Yes.  The exhibit list and all the

7    associated exhibits.  And they include the telephones,

8    phone extractions, as well as the child pornography that

9    the defendant just pled guilty to, as well as the images

09:24:04   10    and videos of Minor Victim 1 and other items such as the

11    shower curtain, backpack, T-shirt and visor that were

12    found at the residence that will tie into the images and

13    videos that we'll be talking about which are the subject

14    of Counts One and Two, Your Honor.

09:24:24   15         THE COURT:  All right.  Government's Exhibits 1

16    through 19 as listed in the government's amended exhibit

17    list, which is Document 44 in the case file, are admitted.

18         (Government's Exhibit Numbers 1 through 19 admitted

19    into evidence.)

09:24:37   20         MS. LEO:  Thank you, Your Honor.

21         And then, Your Honor, at this time the government

22    would ask to read into the record the stipulation of

23    evidence.

24         THE COURT:  Yes.  That's fine.

09:24:47   25         MS. LEO:  Thank you.

1       MS. DANIEL:  May I proceed, Your Honor?

2       THE COURT:  Yes.

3       MS. DANIEL:  The stipulation of evidence in the

4   case of the United States of America v. Jake Delahney

09:25:06   5   Taylor, Criminal Number 3:19-CR-23.

6       The United States of America, by and through Jennifer

7   Lowery, United States Attorney for the Southern District

8   of Texas; Sherin Daniel and Kim Leo, Assistant United

9   States attorneys; and the defendant Jake Delahney Taylor

09:25:23   10   and the defendant's counsel Mark Bennett hereby stipulate

11   and agree as to the following:

12       The defendant is charged by superseding indictment in

13   Count One with sexual exploitation of a child in violation

14   of Title 18, United States Code, Section 2251(a) and (e).

09:25:41   15       The defendant is charged by superseding indictment in

16   Count Two with distribution of child pornography in

17   violation of Title 18, United States Code,

18   Section 2252A(a)(2)(B) and 2252A(b)(1).

19       The defendant is charged by superseding indictment in

09:26:01   20   Count Three with possession of child pornography in

21   violation of Title 18, United States Code,

22   Section 2252A(a)(5)(B) and 2252A(b)(2).

23       The defendant is charged by superseding indictment in

24   Count Four with destruction of property in violation of

09:26:25   25   Title 18, United States Code, Section 2232(a).

1   For purposes of this stipulation the terms "minors,"

2   "child pornography," "sexually explicit conduct,"

3   "computer," "producing," and "visual depiction" have

4   statutory definitions as referenced in the introduction to

09:26:40   5   the indictment.

6   On or about August 14, 2018, Courtnie Taylor went to

7   the Brazoria County District Attorney's office to report

8   that she found pictures and videos of her 14-year-old

9   daughter, Minor Victim 1, taking showers hidden on a

09:26:57   10   calculator app on her husband Jake Delahney Taylor's

11   phone.  Mrs. Taylor also saw other images and videos of

12   naked juvenile females approximately the same age.

13   Mrs. Taylor stated that she was able to take pictures of

14   the images in the calculator app.

09:27:13   15   Mrs. Taylor also discovered that Jake Taylor had been

16   chatting on KIK Messenger and trading the pictures of

17   Minor Victim 1 with others on KIK.  Mrs. Taylor provided

18   Jake Taylor's KIK usernames as jim_parker22 and

19   jimmyt8484.  The KIK chats included Jake Taylor talking

09:27:33   20   about having a peephole in the bathroom of their residence

21   and installing hidden cameras.

22   Mrs. Taylor stated she was able to locate what she

23   believed to be a peephole in the bathroom at their

24   residence but did not see any cameras.  Mrs. Taylor was

09:27:50   25   further able to verify that the naked pictures on Jake

Stipulation of Evidence

1  Taylor's cell phone were of Minor Victim 1.

2      The Brazoria County District Attorney's Office

3  investigator relayed this information to Detective Cecil

4  Arnold with the Pearland Police Department and brought

09:28:04  5  Mrs. Taylor's cell phone to Pearland PD to be processed.

6  See Government's Exhibits 1, 1A and 1B.

7      Detective Staton was able to perform a forensic

8  analysis of Mrs. Taylor's cell phone, Government's

9  Exhibit 1C.

09:28:19  10     After looking at the forensic analysis, Detective

11  Arnold found the images and KIK chats described by

12  Mrs. Taylor on her cell phone, Government's Exhibit 1D.

13     One of the KIK chats was with a username "Burning

14  Gundam" which took place between June 13, 2018, and

09:28:37  15  June 14, 2018.  In this chat Burning Gundam asks if the

16  defendant's stepdaughter plays any sports, to which the

17  defendant responded that she plays all sports.

18     Burning Gundam then asks what the name of that

19  calculator app was, and the defendant responds

09:28:49  20  "Calculator+."

21     Burning Gundam asks, "Do you sniff her panties?" to

22  which the defendant responds, "Yes, wonderful."

23     Burning Gundam states that he hopes that his

24  stepdaughter has a sleepover and that they stay in an

09:29:09  25  apartment "so there are so many girls to choose from" to

1   which the defendant responded, "LOL, awesome."  See

2   Government's Exhibits 1D, Pages 2 to 5.

3       There is another chat between the defendant and Chuck

4   Richards in which Chuck Richards sends an image of a girl

09:29:22  5   and under that image states, "My step, 16."  The defendant

6   then sends an image of Minor Victim 1 wearing a red

7   T-shirt and a visor.  Chuck Richards sends an image of a

8   female wearing some sort of top and underwear laying on

9   her stomach on a bed.  Defendant then sends an image of

09:29:41  10   Minor Victim 1 naked with her buttocks and anus as the

11   focal point.  See Government's Exhibit Number 1D, Pages 6

12   to 7.

13       There is a chat between defendant and Crave Man.

14   Crave Man asks if he has ever played with her.  Defendant

09:29:55  15   responds, "Not yet.  Working on it."  Defendant then sent

16   an image of Minor Victim 1 in which she is naked with her

17   buttock and anus as the focal point.  Crave Man responds,

18   "Wow" and "How did you get that?"  Defendant replies,

19   "Camera in clothes hamper."  Crave Man asked if the

09:30:15  20   defendant has any of the front, to which the defendant

21   sends an image of Minor Victim 1's vagina.  The defendant

22   asks Crave Man if he has any pictures, and Crave Man sends

23   an image of a minor female.  Crave Man tells the defendant

24   that was the only image he had on his phone because he had

09:30:31  25   to move them because the minor female was using the phone

Stipulation of Evidence

the other day and that freaked him out.  Crave Man also
told the defendant that the minor female was 16 years old.
Defendant responded that he had gotten "a calculator app
that hides them.  It's a real calculator until you hit the
passcode.  I started mine with a zero because no one ever
hits zero first on a calculator."  Defendant also sends
Crave Man two more images of Minor Victim 1 in which she
is wearing a red shirt and a visor and another one that is
just of her face.  See Government's Exhibit Number 1D,
Pages 8 through 11.

There is a KIK chat between the defendant and Miss My
Texas PYT on June 14, 2018.  During that chat the
defendant sends an image of Minor Victim 1 wearing a red
shirt and a visor.  Miss My Texas PYT asks the defendant
if the defendant is active with her.  Defendant responds,
"Working on it."  Miss My Texas PYT asks if he has any
sexy pics of hers and that he has a few for trade.  The
defendant then sends an image of Minor Victim 1 naked with
her buttock and anus as a focal point.  Miss My Texas PYT
states that he spies on his, too, from under the bathroom
door.  Defendant responds, "Camera in clothes hamper."
See Government's Exhibit Number 1D, Pages 12 through 16.

There is a KIK chat between the defendant and Play
Time.  The defendant sends an image of Minor Victim 1 in
which he is naked and it depicts her torso, which includes

1   her breasts as well as her vagina.  Play Time sends an

2   image of what appears to be of a minor victim's face,

3   neck, and decolletage.  Defendant sends an image of Minor

4   Victim 1 which depicts Minor Victim 1 naked with her leg

09:32:21   5   up.  From this image one can see her breasts and what

6   appears to be a towel on her lap.  Play Time sends an

7   image which is blurry but seems to depict a naked female.

8   Defendant sends an image of Minor Victim 1, which is a

9   picture of her naked torso which includes her breasts and

09:32:38   10   vagina and states, "... just my spy cam"  and then sends

11   another image of Minor Victim 1 which is a close-up image

12   of Minor Victim 1's vagina.  See Government's Exhibit

13   Number 1D, Pages 17 through 19.

14        There is a KIK chat between defendant and Sand Storm

09:32:54   15   between June 13, 2018, and June 14, 2018.  Sand Storm asks

16   if he wants to share; and defendant responds back, "Sure."

17   Sand Storm states, "Go for it.  I'll match."  Defendant

18   sends an image of Minor Victim 1 naked with her buttock

19   and anus as a focal point.  Sand Storm asks how the

09:33:14   20   defendant got that image and then sends an image of a

21   naked buttocks.  Defendant responds, "Spy cam."  Sand

22   Storm asks if he wants to share more, and the defendant

23   then sends an image of Minor Victim 1's naked torso in

24   which a breast and vagina are visible.  See Government's

09:33:29   25   Exhibit 1D, Pages 20 through 22.

Stipulation of Evidence

1    There is a KIK chat between defendant and Tit Lover in
2    which the defendant tells Tit Lover that he is going to
3    Colorado for work and the family is also going.  Defendant
4    states that he should be able to get some good pictures.
09:33:43  5    Defendant tells Tit Lover that he wishes he wasn't working
6    so much because the summer is the best pic time and I have
7    been missing it.  Defendant further states that he is
8    redoing the spare bathroom and it's backed up to his
9    master.  So he has put in a peephole.  So when he gets
09:33:59  10   back, he should get great pictures.  See Government's
11   Exhibit Number 1D, Pages 23 to 24.

12   Based on this information, Detective Arnold drafted a
13   search warrant and executed at 650 Avenue A, Sweeny,
14   Texas, on August 17th, 2018.  See Government's Exhibit
09:34:17  15   Number 2.

16   Detective Arnold made contact with the defendant, Jake
17   Taylor.  The defendant was read his Miranda warnings and
18   stated that he understood those rights.  Defendant stated
19   that he knew what KIK Messenger was but that he hadn't
09:34:30  20   used it in several years.  Defendant denied knowledge of
21   the usernames jim_parker22 and jimmyt8484.

22   Defendant initially denied taking any naked pictures
23   of Minor Victim 1 and stated that there would be none on
24   his phone.  As the interview continued, the defendant
09:34:48  25   asked that he did see naked -- defendant stated that he

1   did see naked pictures of Minor Victim 1 on his phone but

2   that she probably took these herself to send to other

3   people.

4       When confronted with the fact that Minor Victim 1 was

09:35:02   5   not facing the camera or have a cell phone in her hand in

6   the image, defendant stated that Minor Victim 1 may have

7   set up a camera with a timer.

8       When Detective Arnold stated that he would need to

9   speak with Minor Victim 1 about this, the defendant stated

09:35:16   10   that he did not want the detective to speak with Minor

11   Victim 1.  The defendant then stated that he was the one

12   who took the naked pictures of Minor Victim 1.

13       During the interview, Detective Staton brought the

14   defendant his cell phone so that he would unlock it with

09:35:33   15   his fingerprint pattern that was stored.  See Government's

16   Exhibit Number 18.

17       The defendant went on to admit that he made the videos

18   and took pictures of Minor Victim 1 by using the camera on

19   his cell phone.  Defendant then stated that Minor Victim 1

09:35:47   20   had no idea that he was doing this.  Defendant stated that

21   he would put his cell phone on the vanity before Minor

22   Victim 1 would go into the bathroom and hit "record."

23   When Minor Victim 1 finished showering, he would go in and

24   get his cell phone.

09:36:02   25       Defendant went on to admit that he got involved in a

1  KIK chat group about dads and daughters.  He stated that

2  he received images of child pornography from other KIK

3  users and that he sent out some of the naked images of

4  Minor Victim 1.  Defendant then confirmed the usernames

09:36:17  5  jim_parker22 and jimmyt8484 were his KIK Messenger

6  usernames.  See Government's Exhibit Number 18.

7      Detective Arnold was able to confirm with the on-scene

8  forensic analyst Detective Jonathan Cox that there was

9  what he believed to be child pornography of Minor Victim 1

09:36:36  10  and other children located in the defendant's calculator

11  app on the defendant's cell phone.  Detective Cox relayed

12  to Detective Arnold that the cell phone had a swipe

13  pattern to unlock the phone in order to download from the

14  phone.  The defendant agreed to enter the swipe pattern.

09:36:53  15  When Detective Staton handed the defendant the phone, the

16  defendant immediately deleted the calculator app.

17      The phone was retrieved from the defendant who stated

18  that he thought the detective wanted him to delete the

19  pictures for him.  At the time that the defendant deleted

09:37:07  20  the child pornography, the defendant was well aware of the

21  criminal investigation concerning child pornography and

22  where it was located on his phone.

23      Multiple cell phones, to include a Samsung Note 8,

24  ESN 352078091092999, see Government's Exhibit Number 4; a

09:37:27  25  Samsung Galaxy S5, IMEI 353502068684974, Government's

Stipulation of Evidence                                    28

1    Exhibit Number 6; and a Samsung Galaxy S5, IMEI

2    353502064604661, Government's Exhibit Number 5; as well as

3    a shower curtain, Government's Exhibit Number 13; a

4    backpack, Government's Exhibit Number 14; T-shirt,

09:37:55  5    Government's Exhibit Number 15; and visor, Government's

6    Exhibit Number 16, that all matched items in the images

7    that were collected as evidence.

8        Detective Staton performed a forensic analysis on the

9    three cell phones.  See Government's Exhibit Number 4D,

09:38:09  10   the phone extraction of Samsung Note 8; Government's

11   Exhibit Number 5D, phone extraction of Galaxy 5S in a

12   case; Government's Exhibit Number 6D, phone extraction of

13   the Galaxy S5 not in case.

14       On the Samsung Note 8, Detective Staton found 48

09:38:26  15   images of Minor Victim 1.  See Government's Exhibit

16   Number 7.  The images appear to be still shots or cropped

17   images from videos.  19 images depict Minor Victim 1's

18   naked vagina, buttocks and anus.  Five of the images show

19   Minor Victim 1 in the bathroom.

09:38:41  20       On the Samsung Galaxy S5, which was in a case, IMEI

21   353502064604661, Detective Staton found eight videos of

22   child pornography.  The child pornography was of a

23   prepubescent female who was displaying her genitals in a

24   lewd and lascivious manner and who was masturbating with a

09:39:06  25   plastic object.  See Government's Exhibit Number 8.  None

Stipulation of Evidence

1    of these videos were of Minor Victim 1.

2        On the Samsung Galaxy S5, which was not in a case,

3    IMEI 353502068684974, Detective Staton found images and

4    videos of minors engaged in sexually explicit conduct as

09:39:28    5    well as images and videos of Minor Victim 1.

6        Detective Staton found 24 images and 78 videos that

7    meet the federal definition of child pornography not

8    involving Minor Victim 1.  See Government's Exhibit

9    Number 9A.  These images and videos depicted a minor

09:39:43   10   female child being orally penetrated by the erect penis of

11   an adult male, a prepubescent minor female being vaginally

12   penetrated by the erect penis of an adult male, a

13   prepubescent minor female masturbating with an object, and

14   a prepubescent minor female displaying her genitals in a

09:40:02   15   lewd and lascivious manner.  See Government's Exhibit 9A.

16       Also on the Samsung Galaxy S5, which was not in a

17   case, Detective Staton found 70 images and 134 videos of

18   Minor Victim 1.  See Government's Exhibit Number 9B.  The

19   images and videos appear to be taken in the bathroom.  The

09:40:20   20   images appear to be still shots or cropped images from the

21   videos.  The images depict Minor Victim 1's naked vagina,

22   buttocks and anus.  Some of the videos appear to be edited

23   and to have been in a slower motion.

24       There is one video, approximately seven minutes in

09:40:37   25   length, in which the defendant's face is seen in the

Stipulation of Evidence

1    beginning of the video setting up the recording device in

2    the bathroom.  The defendant leaves, and Minor Victim 1

3    comes into the bathroom wearing a white top and

4    pink-and-purple-striped pajama bottoms.  The video

09:40:52    5    captures Minor Victim 1 taking off her clothing before

6    showering.

7        There is a second video, which is approximately

8    11 minutes in length.  Minor Victim 1 is seen going into

9    the bathroom wearing a black shirt and white-and-black

09:41:05    10    shorts.  Minor Victim 1 undresses, utilizes the toilet,

11    gets into the shower, gets out of the shower, towels off,

12    and then gets dressed.  At the end of the video, the

13    defendant is seen going into the bathroom and taking down

14    the recording device.

09:41:19    15        There is a third video, which is approximately

16    17 minutes in length, in which Minor Victim 1 is seen in

17    the bathroom wearing a pink sweatshirt and black pants.

18    Minor Victim 1 gets undressed, showers, towels off, and

19    gets out of the shower.  The defendant is then seen at the

09:41:34    20    end of the video going into the bathroom.

21        There is a fourth video, which is approximately nine

22    minutes in length, in which Minor Victim 1 is wearing a

23    blue sports uniform.  Minor Victim 1 undresses, utilizes

24    the toilet, and showers.  This video appears to be in slow

09:41:50    25    motion.

1    In all of the videos the recording device was

2  positioned to capture Minor Victim 1 when she is

3  undressing, utilizing the toilet, utilizing the shower,

4  towelling off or getting dressed.  No other activity by

09:42:04  5  her was recorded.  Minor Victim 1 was unaware that her

6  actions were being observed or recorded.  See Government's

7  Exhibit 9B.

8    Minor Victim 1's date of birth is July 21, 2004.

9  Minor Victim 1 would have been 13 years old at the time

09:42:18  10  that the images and videos were produced of her.

11    The Samsung Note 8 and both Samsung Galaxy S5 cell

12  phones were manufactured outside of the state of Texas.

13  See Government's Exhibits 4C, 5C and 6C.  Consequently,

14  the cell phone media and the materials used in this

09:42:34  15  offense traveled in foreign or interstate commerce.

16  Further, the defendant utilized the internet when he was

17  utilizing his KIK account, which is a means and facility

18  of interstate and foreign commerce.

19    We, the undersigned, have read, understand and agree

09:42:48  20  to the foregoing stipulation.  It is signed by the AUSAs

21  and the attorney for the defendant and -- the defendant's

22  lawyer and the defendant by his lawyer with his

23  permission.

24    That concludes the stipulation of evidence, Your

09:42:59  25  Honor.

1          THE COURT:  All right.  That stipulation is

2    admitted.

3        The government has a witness to call?

4          MS. DANIEL:  Yes, Your Honor.

09:43:09    5          MS. LEO:  Yes, Your Honor.  At this time we would

6    call James Staton to the stand.

7          THE COURT:  Detective Staton.

8        If you'll pause there by the court reporter and raise

9    your right hand.

09:43:25   10          DETECTIVE STATON:  (Complying.)

11          THE COURT:  Do you solemnly swear that the

12    testimony that you are about to give in the case that is

13    now on trial will be the truth, the whole truth and

14    nothing but the truth so help you God?

09:43:33   15          THE WITNESS:  I do.

16          THE COURT:  You may take the stand.

17          THE WITNESS:  (Complying.)

18          MS. LEO:  May I proceed, Your Honor?

19          THE COURT:  Yes.  Yes, you may.

09:43:48   20          MS. LEO:  Thank you.

21                    **DETECTIVE JAMES STATON,**

22    having been first duly sworn testified, as follows:

23                    **DIRECT EXAMINATION**

24    BY MS. LEO:

09:43:50   25    **Q.**  Please state your name for the record, sir.

Direct Examination of Detective Staton

1   **A.**   James Staton.

2   **Q.**   And for whom are you currently employed?

3   **A.**   The Pearland Police Department.

4   **Q.**   And in what capacity?

09:43:58   5   **A.**   As a detective.

6   **Q.**   How long have you been employed with the Pearland

7   Police Department?

8   **A.**   Since 2008.

9   **Q.**   How long have you been employed as a detective?

09:44:04   10   **A.**   Since 2015.

11   **Q.**   And prior to being employed as a detective with

12   Pearland Police Department, what were you deployed as or

13   employed as with them?

14   **A.**   I was a patrol officer.

09:44:14   15   **Q.**   And you said since 2008?

16   **A.**   Yes, ma'am.

17   **Q.**   And were you employed with any other law enforcement

18   agencies prior to that?

19   **A.**   Yes, ma'am.

09:44:22   20   **Q.**   With what agency?

21   **A.**   Harris County Precinct 5 Constable's Office.

22   **Q.**   How long were you employed there?

23   **A.**   For ten and a half years.

24   **Q.**   And are you -- can you tell the Court a little bit

09:44:33   25   about your training and experience to become a certified

Direct Examination of Detective Staton

1  peace officer?

2  **A.**   Yes.  You start out just going through a basic peace

3  officer academy where you have such topics as Penal Code,

4  defensive tactics, transportation, the traffic law, things

09:44:47  5  like that.

6  **Q.**   And are you current in your certifications?

7  **A.**   Yes, ma'am.

8  **Q.**   And in regards to your current position as being a

9  detective, can you tell the Court a little bit about your

09:44:58  10  duties as a detective?

11  **A.**   Yes, ma'am.  I'm assigned to our crime scene unit.  So

12  I handle crime scene call-outs, respond to crime scenes to

13  take photographs, collect evidence, process evidence, also

14  one of the custodians of our property and evidence room

09:45:16  15  and also do digital forensics.

16  **Q.**   Can you explain to the Court how you do digital

17  forensics?

18  **A.**   Digital forensics is basically involving computers,

19  cell phones, video recorders, stuff like that.  Basically,

09:45:32  20  we gather the evidence in a way where it doesn't get

21  tampered with or disturbed.  And then we use forensically

22  sound procedures to examine, to make copies of that, and

23  to examine the evidence.

24  **Q.**   And have you underwent any training in order to do the

09:45:46  25  digital forensics?

Direct Examination of Detective Staton

```
         1   A.   Yes.

         2   Q.   What training was that?

         3   A.   I have had various training from AccessData,

         4   Cellebrite, United States Secret Service, National

09:45:58 5   Computer Forensics Institute, Federal Law Enforcement

         6   Training Center, which is part of Department of Homeland

         7   Security, their cyber division.

         8   Q.   Now, Detective Staton, in regards to this particular

         9   case dealing with Mr. Taylor, did you process any of the

09:46:12 10  forensics in this case?

        11   A.   Yes, ma'am.

        12   Q.   And what forensics did you process?

        13   A.   Just examining, getting extractions from several

        14   mobile devices, and also analyzing those extractions.

09:46:26 15  Q.   Were you able to do an extraction on Government's

        16   Exhibit Number 7, which was the Samsung Note 8?

        17   A.   Yes, ma'am.

        18   Q.   And in regards to that particular device, were you

        19   able to -- through your investigation, were you able to

09:46:41 20  determine who owned that device?

        21   A.   Yes.

        22   Q.   And who owned that device?

        23   A.   Jake Taylor.

        24   Q.   Do you know if that was his current device?

09:46:49 25  A.   Yes.  At that time it was.
```

Direct Examination of Detective Staton

1   **Q.**   How do you know that?

2   **A.**   Several reasons.  It had his e-mails, his name, phone

3   number, and user accounts.

4   **Q.**   Detective Staton, were you present at the time of the

09:47:03   5   execution of the search warrant at Mr. Taylor's residence?

6   **A.**   Yes.

7   **Q.**   Was that phone one that you were forensically

8   examining on scene?

9   **A.**   Yes.  Myself and Detective Cox.

09:47:15   10   **Q.**   And in regards to the -- that particular device, what,

11   if anything, did you find on that device?

12   **A.**   After the analysis, I found 48 images of Minor

13   Victim 1 on it.

14   **Q.**   And in regards to those images, are they the images

09:47:32   15   that are put on Government's Exhibit Number 7?

16   **A.**   Yes.

17   **Q.**   And with these 48 images that you found of Minor

18   Victim 1 that are Government's Exhibit Number 7,

19   approximately how many of them -- or, actually, can you

09:48:02   20   describe the content of the images that you found of Minor

21   Victim 1?

22   **A.**   They were images of Minor Victim 1 in the shower,

23   getting out of the shower, towelling off.

24   **Q.**   Okay.  And did you find any that were -- that appear

09:48:18   25   to be cropped in any way?

Direct Examination of Detective Staton

1   **A.**   Yes.

2   **Q.**   And approximately how many of them did you find?

3   **A.**   That were cropped?

4   **Q.**   Or that were -- the focal point was of her -- of her

09:48:36   5   vaginal area or pubic area.

6   **A.**   I don't remember the exact number on just that area.

7   **Q.**   Okay.  Let me show you what has been marked as

8   Government's Exhibit Number 7A.  Is this one of the images

9   that you found on that device?

09:48:58   10   **A.**   Yes.

11   **Q.**   And can you describe that for the record?

12   **A.**   Minor Victim 1 towelling off after getting out of the

13   shower.

14   **Q.**   Let's look now at Government's Exhibit Number 7B.  Can

09:49:14   15   you describe that for the record?

16   **A.**   Minor Victim 1 towelling off in the shower.

17   **Q.**   And 7C?

18   **A.**   Minor Victim 1 again towelling off.

19   **Q.**   And 7D?

09:49:36   20   **A.**   Minor Victim 1 getting undressed.

21   **Q.**   Now, in this one can you -- is Minor Victim 1 naked?

22   **A.**   Yes.

23   **Q.**   And do you -- what do you see in this picture?  What

24   body parts do you see?

09:49:50   25   **A.**   Vagina and breasts.

Direct Examination of Detective Staton

1    **Q.**   Okay.  And now let's look at Government's Exhibit

2    Number 7E, please.  What is being shown in this picture?

3    **A.**   Her vagina.

4    **Q.**   Okay.  Now -- and you testified that you found a total

09:50:10    5    of 48 images of Minor Victim 1 on this particular device?

6    **A.**   Yes, ma'am.

7    **Q.**   Did you find anything else of investigative interest

8    on this device?

9    **A.**   Yes.  Even though the app had been uninstalled, I

09:50:29    10    did -- I was able to recover in the file system the actual

11    file system structure for that app.

12    **Q.**   Okay.  And what app was that?

13    **A.**   The Calculator+.

14    **Q.**   What is the Calculator+ app?

09:50:43    15    **A.**   It's just an app that appears at first glance it's a

16    calculator but you can also hide images, videos and things

17    in.

18    **Q.**   Okay.  And that itself was deleted?

19    **A.**   It was uninstalled from the phone to where a user

09:50:59    20    couldn't use it, but the file system of it was still

21    present on the device.

22    **Q.**   Okay.  Aside from looking at the Samsung Note 8, did

23    you also have an opportunity to review the Galaxy S5 that

24    was found in a case?

09:51:15    25    **A.**   Yes.

1   **Q.**   And that is Government's Exhibit Number 8; is that

2   correct?

3   **A.**   Yes.

4   **Q.**   I'm sorry.  That's Government's Exhibit Number 5; is

09:51:26   5   that correct?

6   **A.**   Yes.

7   **Q.**   And in regards to that particular phone, did you

8   perform an extraction on that device?

9   **A.**   Yes.

09:51:36   10   **Q.**   And in regards to that extraction, what, if anything,

11   did you find?

12   **A.**   Eight videos of regular child pornography.

13   **Q.**   When you say "regular child pornography," what do you

14   mean by that?

09:51:48   15   **A.**   Child pornography that depicts not Minor Victim 1.

16   **Q.**   Okay.  And can you describe the child pornography that

17   you found?

18   **A.**   A prepubescent female naked, showing her vagina, and

19   masturbating with a plastic object.

09:52:05   20   **Q.**   And is that what is contained within Government's

21   Exhibit Number 8?

22   **A.**   Yes.

23   **Q.**   And now, briefly let me publish that.  Let's look at

24   Government's Exhibit Number 8A.

09:52:28   25           MR. BENNETT:  I'm sorry, Ms. Leo.  We're not

Direct Examination of Detective Staton

1    getting it on our screen here.  Should we be?

2              MS. LEO:  Yes.

3              MR. BENNETT:  We haven't seen any at all.  I have

4    been looking over to your system.

09:52:41   5              MS. LEO:  Sorry, Your Honor.  If we could have a

6    brief moment to figure out why.

7              THE COURT:  Yes.

8              CASE MANAGER:  There you go.

9              MR. BENNETT:  Thank you, Mr. Cardenas.

09:53:01  10              MS. LEO:  Yes.  If we could look at 8A.

11         (Displayed Government's Exhibit Number 8A.)

12    BY MS. LEO:

13    **Q.**   What is being shown in Government's Exhibit Number 8A?

14    **A.**   A young child playing with her bra.

09:53:13  15    **Q.**   Now, that's not child pornography, is it?

16    **A.**   No.

17    **Q.**   And the next video, though, is that child pornography,

18    8B?

19    **A.**   Yes.

09:53:21  20    **Q.**   And is it the same child, though?

21    **A.**   Yes.

22    **Q.**   Okay.  So in the series or the eight videos that you

23    found that are contained in Government's Exhibit Number 8,

24    which were found on that Galaxy S5 that was in a case,

09:53:38  25    were they all of the same victim?

1    **A.**   Yes.

2    **Q.**   Who is being shown or whose face is shown in that

3    first video, 8A; is that correct?

4    **A.**   Yes, ma'am.

09:53:49   5          MS. LEO:   Okay.   Let's briefly publish 8B,

6    please.

7          (Displayed Government's Exhibit Number 8B.)

8    BY MS. LEO:

9    **Q.**   Okay.   Thank you.   What is being shown in that video?

09:54:02   10   **A.**   A female masturbating with some yellow plastic object.

11   **Q.**   Okay.   And the other videos that you found, are they

12   similar in nature to that particular video?

13   **A.**   Yes, ma'am.

14   **Q.**   Now, did you also examine the Galaxy S5 that wasn't in

09:54:24   15   a case which is listed as Government's Exhibit Number 6?

16   **A.**   Yes, ma'am.

17   **Q.**   And did you perform an extraction on that particular

18   device?

19   **A.**   Yes, ma'am.

09:54:34   20   **Q.**   And that extraction is Government's Exhibit Number 6D;

21   is that correct?

22   **A.**   Yes.

23   **Q.**   And what, if anything, did you find on the Galaxy S5

24   not in a case that was of relevance to this investigation?

09:54:59   25   **A.**   Seventy images and approximately 134 videos of Minor

1    Victim 1.

2    **Q.**   Okay.

3    **A.**   And there was also regular child pornography:

4    approximately 24 images and approximately 78 videos.

09:55:13    5    **Q.**   And let's first talk about the regular child

6    pornography.  Can you describe some of the regular child

7    pornography that you found?

8    **A.**   You had children in lewd and lascivious positions

9    showing vaginas.  You also had children involved in sex

09:55:34   10    acts with adult males.

11        MS. LEO:  Let me -- let's briefly publish

12    Government's Exhibit Number 9A1, please.

13        (Displayed Government's Exhibit Number 9A1.)

14    BY MS. LEO:

09:56:00   15    **Q.**   What is happening in this particular video?

16    **A.**   A young female performing oral sex on two males.

17    **Q.**   Okay.  And in regards to -- and that particular video

18    was found on that Galaxy S5 not in a case?

19    **A.**   Correct.

09:56:18   20        MS. LEO:  And let's look at Government's Exhibit

21    Number 9A2, please.

22        (Displayed Government's Exhibit Number 9A2.)

23    BY MS. LEO:

24    **Q.**   Okay.  What is happening in that particular video --

09:56:30   25    or that particular image?  Excuse me.

Direct Examination of Detective Staton

1  **A.**   It's an image of a young female being penetrated by a

2  male with his penis.

3  **Q.**   Okay.  And that also was found in the collection on

4  this Galaxy S5 not in the case?

09:56:44  5  **A.**   Yes, ma'am.

6  **Q.**   And the other images and videos are -- that you found

7  of what you said were regular child pornography, are they

8  similar in nature to what was published here?

9  **A.**   Yes.

09:56:57  10  **Q.**   Now, you also testified that you found 70 images of

11  Minor Victim 1?

12  **A.**   Yes, ma'am.

13  **Q.**   And of the images that you found of Minor Victim 1,

14  what did they include?

09:57:16  15  **A.**   Of her in the shower, getting out of the shower,

16  towelling off.

17  **Q.**   Okay.  Let me publish and show you Government's

18  Exhibit Number -- and are they all contained in

19  Government's Exhibit Number 9B; is that correct?

09:57:36  20  **A.**   Yes.

21  **Q.**   Let me show you what has been marked as 9B1, please.

22      (Displayed Government's Exhibit Number 9B1.)

23  BY MS. LEO:

24  **Q.**   Can you describe this image?

09:57:46  25  **A.**   The anus and buttocks of Minor Victim 1.

```
 1   Q.   Okay.  Let's look at 9B2, please.

 2        (Displayed Government's Exhibit Number 9B2.)

 3   A.   A close-up shot of Minor Victim 1's vagina.

 4   BY MS. LEO:

 5   Q.   Okay.

 6        MS. LEO:  9B3, please.  I don't believe that one

 7   was.

 8        I'm sorry, Your Honor.  If we could just have a

 9   moment.  We're having just --

10        THE COURT:  Yes.

11        (Displayed Government's Exhibit Number 9B3.)

12   BY MS. LEO:

13   Q.   What is being depicted in this image?

14   A.   Minor Victim 1 in the shower towelling off.

15        MS. LEO:  Okay.  And let's look at 9B4, please.

16        (Displayed Government's Exhibit Number 9B4.)

17   BY MS. LEO:

18   Q.   What is being depicted in this image?

19   A.   The vagina of Minor Victim 1 in the shower.

20        (Displayed Government's Exhibit Number 9B5.)

21   BY MS. LEO:

22   Q.   Okay.  What is being depicted in 9B5, please?

23   A.   Minor Victim 1 in the shower.

24   Q.   Okay.  Now, the other images that you found of Minor

25   Victim 1 -- you said there was a total of 70 -- are
```

09:57:58  (line 5)
09:58:55  (line 10)
10:00:22  (line 15)
10:00:33  (line 20)
10:01:00  (line 25)

Direct Examination of Detective Staton

1    similar in nature to these particular ones that are being

2    published?

3    **A.**   Yes, ma'am.

4    **Q.**   And you also testified that you found 134 videos of

10:01:14    5    Minor Victim 1?

6    **A.**   Yes, ma'am.

7    **Q.**   And, actually, let me back up a second.  In regards to

8    those images that you found, did they appear to be still

9    images of videos or did they appear to be cropped in any

10:01:31   10    way, shape or form?

11    **A.**   Yeah.  Some of them.

12    **Q.**   And the videos that you found of Minor Victim 1, what

13    were they videos of?

14    **A.**   Of her in the -- of Minor Victim 1 in the shower.

10:01:43   15    **Q.**   And in regards to those particular videos, could you

16    tell if there were 134 different and distinct videos?

17    **A.**   No.  They appeared to be only a handful of videos.  A

18    lot of them were slow motion or cropped or just edits of a

19    couple of seconds of videos.

10:02:07   20    **Q.**   Of the longer videos?

21    **A.**   Yes.

22    **Q.**   In regards to being able to identify what I'm going to

23    refer to as the full videos, how were you able to identify

24    a complete video or a full video?

10:02:21   25    **A.**   Based on the clothing of Minor Victim 1 coming in and

Direct Examination of Detective Staton

1    out of the bathroom and also based on the angles of the

2    videos.

3    **Q.**   And so there were -- how many were distinct videos

4    that you found then?

10:02:35   5    **A.**   A minimum of five.

6    **Q.**   Okay.  And in regards to those five videos that you

7    found of Minor Victim 1, let me go ahead and publish.  Are

8    they -- all of the videos of Minor Victim 1, are they

9    contained within Government's Exhibit Number 9B?

10:02:58   10   **A.**   Yes.

11           MS. LEO:  And let me go ahead and publish one of

12   those videos, 9B6, please.

13       (Displayed Government's Exhibit Number 9B6.)

14   BY MS. LEO:

10:03:25   15   **Q.**   Can you describe what is happening in this video?

16   **A.**   The defendant is sitting on a toilet adjusting some

17   type of recording device.

18   **Q.**   And, Detective Staton, how long is this video,

19   approximately?

10:03:56   20   **A.**   Six minutes and 52 seconds.

21   **Q.**   After the defendant leaves in this video, do you see

22   him come back in this video?

23   **A.**   No.

24   **Q.**   Is there -- what happens in this video?

10:04:58   25   **A.**   At about two minutes in, Minor Victim 1 gets in the

Direct Examination of Detective Staton

          1    shower and then just takes a shower.

          2    **Q.**   At about two minutes in?

          3    **A.**   No.  I'm sorry.  At about six minutes in.

          4    **Q.**   Okay.  We're going to jump to about six minutes in.

10:06:12  5    Is that Minor Victim 1 who just entered into the camera

          6    view?

          7    **A.**   Yes.

          8    **Q.**   For purposes of the record, what is she wearing?

          9    **A.**   A white shirt and striped pajama bottoms.

10:06:40  10   **Q.**   Can you describe what she is doing?

          11   **A.**   Taking her clothes off.

          12        MS. LEO:  Okay.  Let's now look at Government's

          13   Exhibit Number 9B7, please.

          14       (Displayed Government's Exhibit Number 9B7.)

10:07:07  15   BY MS. LEO:

          16   **Q.**   Can you describe what is happening when the video

          17   starts?

          18   **A.**   The camera starts with a female getting off the

          19   toilet; and then shortly after, Minor Victim 1 comes in.

10:07:23  20   **Q.**   And in this particular video, what is Minor Victim 1

          21   wearing?

          22   **A.**   A black shirt and black-and-white shorts.

          23   **Q.**   And how long is this video?

          24   **A.**   A little over 11 minutes long.

10:07:48  25   **Q.**   Can you describe what she is doing now?

Direct Examination of Detective Staton

1    **A.**   Taking her clothes off.

2    **Q.**   Is she using the toilet at this point?

3    **A.**   Yes.

4    **Q.**   What is she doing at this point?

10:09:00   5    **A.**   Turning the shower on.

6    **Q.**   And now?

7    **A.**   She gets in the shower.

8    **Q.**   And is there a period of time that she is -- that we

9    don't see anything because she is in the shower?

10:09:23   10   **A.**   Yes.

11   **Q.**   At what point in time do we see something again in

12   this video?

13   **A.**   I don't remember the exact time, but she showers for

14   several minutes.

10:09:32   15   **Q.**   Okay.  Let's jump ahead to approximately 5 minutes and

16   35 seconds.  What is happening now?

17   **A.**   She opens the shower curtain and starts towelling off.

18   **Q.**   What is she doing now?

19   **A.**   Still towelling off.

10:12:49   20   **Q.**   In this particular video do we see the defendant at

21   the end?

22   **A.**   Yes.

23   **Q.**   And from the shadow, does it appear that Minor

24   Victim 1 is still in the bathroom?

10:13:23   25   **A.**   Yes.

Direct Examination of Detective Staton

1  Q.  What is she doing now?

2  A.  Getting dressed, it appears.

3  Q.  And in this video you see her vagina and her pubic

4  area; is that correct?

10:14:03  5  A.  Yes.

6  Q.  And then, let's skip to 11.  And what do we see now?

7  A.  The defendant reaching down and grabbing the recording

8  device.

9       MS. LEO:  Let's go ahead and look at Government's

10:14:53  10  Exhibit Number 9B8, please.

11     (Displayed Government's Exhibit Number 9B8.)

12  BY MS. LEO:

13  Q.  And in this particular video, what is the Minor Victim

14  wearing?

10:15:07  15  A.  A blue shirt.

16  Q.  And in this video does it appear to be in some sort of

17  slow motion?

18  A.  Yes.

19  Q.  With your review of the other videos that you found on

10:15:23  20  this particular device, did you find, one, a video -- this

21  particular video that was in regular time?

22  A.  That, I don't remember.

23  Q.  How long is this particular video?

24  A.  Nine minutes and 55 seconds.

10:16:30  25  Q.  What is the minor victim doing now?

Direct Examination of Detective Staton                                    50

 1   **A.**   Undressing.

 2   **Q.**   At this point in the video, are you able to see the

 3   minor victim's pubic area?

 4   **A.**   Yes.

10:19:20   5   **Q.**   What is being shown now in this, in the video?

 6   **A.**   Her buttocks area.

 7   **Q.**   What is she doing now in the video?

 8   **A.**   Getting in the shower.

 9   **Q.**   What was -- was she just turning on the shower?

10:20:04  10   **A.**   I believe the controls for the faucet were on the side

11   where she is at now.

12   **Q.**   Okay.  In this video does she use the toilet?

13   **A.**   Yes.

14   **Q.**   And then does she ultimately get into the shower?

10:21:06  15   **A.**   Yes.

16   **Q.**   I'm going to go ahead and just skip ahead just a

17   little bit.  Now, at this point in the video is she now in

18   the shower?

19   **A.**   Yes.

10:23:04  20        MS. LEO:  Okay.  Let's now go ahead and look at

21   Government's Exhibit Number 9B9, please.

22        (Displayed Government's Exhibit Number 9B9.)

23   BY MS. LEO:

24   **Q.**   What is being shown in Government's Exhibit

10:23:21  25   Number 9B9?

1  **A.**   A slow-motion video of Minor Victim 1 --

2  **Q.**   Now, is this the same -- sorry.

3  **A.**   -- getting undressed.

4  **Q.**   Is this the same video that was previously shown that

10:23:32  5  was 9B6?

6  **A.**   Yes.

7  **Q.**   The video that was 6 minutes and 52 seconds?

8  **A.**   Yes.

9  **Q.**   The one where she was wearing the pink-and-purple

10:23:44  10  pajama bottoms, the striped pajama bottoms, with the white

11  top?

12  **A.**   Yes.

13  **Q.**   And this particular video is how long?

14  **A.**   One minute and 21 seconds.

10:23:58  15  **Q.**   And it's just an edited version of that longer video?

16  **A.**   Yes.

17  **Q.**   And this is slowed down?

18  **A.**   Yes, ma'am.

19  **Q.**   And in this particular video, do you see her pubic

10:24:24  20  region and her vagina?

21  **A.**   Yes.

22        MS. LEO:  Let's look then at Government's Exhibit

23  Number 9B10, please.

24     (Displayed Government's Exhibit Number 9B10.)

10:24:43  25  BY MS. LEO:

Direct Examination of Detective Staton

1  **Q.**  And with this particular video, the screen is black.

2  Does the video start off with a black screen?

3  **A.**  Yes.

4  **Q.**  And, more or less, when do we start to see something?

10:25:04  5  **A.**  A little after six minutes into the video.

6          MS. LEO:  Okay.  Let's go to the six-minute mark,

7  please.  And how long is this particular video?

8  **A.**  A little over 17 minutes.

9  BY MS. LEO:

10:25:23  10  **Q.**  And what is Minor Victim 1 wearing in this video?

11  **A.**  A purple hooded sweatshirt and dark-colored pants.

12  **Q.**  What is Minor Victim 1 doing?

13  **A.**  Getting undressed.

14  **Q.**  What is she doing now?

10:27:32  15  **A.**  Getting in the shower.

16  **Q.**  And is she in the shower for a few minutes?

17  **A.**  Yes.

18  **Q.**  What did she just do now?

19  **A.**  It looked like she threw something.

10:27:48  20  **Q.**  Okay.  Let's jump to seven -- I'm sorry -- 12:21.  And

21  what is happening now?

22  **A.**  She opened the shower curtain, and she is towelling

23  off.

24  **Q.**  In this particular video, do you see the defendant at

10:29:51  25  the end of the video?

1    **A.**   Yes.

2    **Q.**   What is Minor Victim 1 doing at this point?

3    **A.**   At this point, she has still got her towel around her;

4    but I can't tell what exactly she is doing.

10:32:42   5    **Q.**   Who is it that just came into the bathroom?

6    **A.**   The defendant.

7         MS. LEO:   And now let's look at the last one,

8    which is 9B11, please.

9         (Displayed Government's Exhibit Number 9B11.)

10:32:51   10   BY MS. LEO:

11   **Q.**   How long is this particular video?

12   **A.**   Nine minutes and 20 seconds.

13   **Q.**   And what is the minor victim wearing?

14   **A.**   A black shirt and white-and-black shorts.

10:33:17   15   **Q.**   Now, Detective Staton, we had seen another video in

16   which the victim was wearing a similar outfit.  Is this a

17   separate video from the other one?

18   **A.**   Yes.

19   **Q.**   And how can you tell?

10:33:32   20   **A.**   There were two different angles of the video.

21   **Q.**   And in this particular one, did it appear she had

22   trouble opening up the shower curtain?

23   **A.**   Yes.

24   **Q.**   In the other one did she have trouble opening the

10:33:46   25   shower curtain?

Direct Examination of Detective Staton

1   **A.**  No, ma'am.

2   **Q.**  What is she doing at this point in time in this video?

3   **A.**  Using the restroom.

4   **Q.**  What is the minor victim doing at this point?

10:34:58  5   **A.**  Undressing.

6   **Q.**  And now what does she do?

7   **A.**  She is getting in the shower.

8   **Q.**  Is she in the shower for several minutes?

9   **A.**  Yes.

10:35:27  10        MS. LEO:  Let's skip to about 7:26.

11  BY MS. LEO:

12   **Q.**  Now what is happening in the video?

13   **A.**  She is opening the shower curtain and towelling off

14  again.

10:36:33  15   **Q.**  Now what is she doing?

16   **A.**  Just stepped out of the shower and still towelling

17  off.

18   **Q.**  Now what does it appear that she is doing?

19   **A.**  Putting on her underwear.

10:37:46  20   **Q.**  Now, in addition to finding those images and videos of

21  Minor Victim 1, along with the other images and videos of

22  the regular child pornography, did you find anything else

23  that was of evidentiary value on the defendant's cell

24  phone, the Galaxy S5 that was not in a case?

10:38:10  25   **A.**  Numerous selfies of himself, a picture of his driver's

1    license.

2    **Q.**   Did you find any applications that were on that device

3    or associated with any of his e-mails?

4    **A.**   Yes.

10:38:28    5        MS. LEO:  Let me show you Government's Exhibit

6    Number 9C, if we could publish that, please.

7        (Displayed Government's Exhibit Number 9C.)

8    BY MS. LEO:

9    **Q.**   Is this a list of those applications that you found?

10:38:46    10   **A.**   I'm not seeing anything on the screen.

11   **Q.**   Sorry.  Is it still not showing up?

12   **A.**   There it is.

13   **Q.**   Is that the list that you found of the different

14   applications?

10:39:07    15   **A.**   Yes.

16   **Q.**   And what stood out to you in regards to these

17   applications?

18   **A.**   The vast majority of those apps were some type of

19   photo/video-editing apps.

10:39:18    20   **Q.**   And when you were looking at the images and the

21   videos, were you able to try to compare some of the images

22   that you found to the videos to see if you could figure

23   out which images came from which videos?

24   **A.**   Yes.

10:39:37    25   **Q.**   And were you able to do that?

Direct Examination of Detective Staton

```
         1   A.   Yes.

         2   Q.   And let me -- and did you -- do you have a list of the

         3   images that you compared and figured out which videos they

         4   came from?

10:39:48 5   A.   Yes.

         6   Q.   Is that Government's Exhibit Number 19?

         7   A.   Yes.

         8   Q.   Let me show you Government's Exhibit Number 19A.  And,

         9   of course, 19A, the bigger picture, is that the video?

10:40:10 10  A.   Yes, ma'am.

         11  Q.   In this particular video, is that the one that we just

         12  played which was 9B11, the one that is, I believe,

         13  9 minutes and 20 seconds?

         14  A.   Yes, ma'am.

10:40:25 15  Q.   And then the smaller image, is that Government's

         16  Exhibit Number 7A?

         17  A.   Yes.

         18  Q.   And that image was found on the Samsung -- I'm

         19  sorry -- the Samsung Note 8; is that correct?

10:40:55 20  A.   No.  This one was actually -- the picture?  Is that

         21  what you are talking about?

         22  Q.   Yes.

         23  A.   The picture was -- I'm sorry.  The video was from

         24  Item 9.  The picture, I'm not 100 percent sure on.

10:41:11 25  Q.   The picture is what we previously had published that
```

Direct Examination of Detective Staton

1  was from Government's Exhibit Number 7A.

2  **A.**  Okay.

3  **Q.**  Let me show you Government's Exhibit Number 7A.  Is

4  that that same picture?

10:41:34  5  **A.**  Yes.

6  **Q.**  Okay.  And so that image came from the longer video,

7  which was the 9 minutes and 20 seconds video, which is

8  Government's Exhibit Number 9B11; is that correct?

9  **A.**  Yes.

10:41:57  10  **Q.**  Let me show you Government's Exhibit Number 19B.  What

11  video is being shown in that?

12      (Displayed Government's Exhibit Number 19B.)

13  **A.**  The video, the 17 minute and 8 second video.

14  BY MS. LEO:

10:42:12  15  **Q.**  And that 17 minute and 8 second video, that is

16  Government's Exhibit Number 9B10; is that correct?

17  **A.**  Yes.

18  **Q.**  And the still image is from -- is Government's Exhibit

19  Number 7B, which was found on the Galaxy Note; is that

10:42:33  20  correct?

21  **A.**  Note 8, yes.

22  **Q.**  I'm sorry.  Note 8.

23          MS. LEO:  Now, let's look at 19C, please.

24      (Displayed Government's Exhibit Number 19C.)

10:42:40  25  BY MS. LEO:

Direct Examination of Detective Staton

1   **Q.**   The video in 19C, what video is this from?

2   **A.**   The 9 minute and 20 second video.

3   **Q.**   Which is Government's Exhibit Number 9B11?

4   **A.**   Yes.

10:42:57   5   **Q.**   And that image is Government's Exhibit Number 9 --

6   excuse me -- is Government's Exhibit Number 7E, which was

7   found in the Note 8?

8   **A.**   Yes.

9   **Q.**   Government's Exhibit Number 19D, what video is this

10:43:15   10   that is being shown in this exhibit?

11   **A.**   From the 9 minute and 20 second video.

12   **Q.**   Which is 9B11; is that correct?

13   **A.**   Yes.

14   **Q.**   And the image that's being shown, is that Government's

10:43:26   15   Exhibit Number 9B1?

16   **A.**   Yes.

17   **Q.**   Okay.  And then Government's Exhibit Number 19E, what

18   video is being shown?

19   **A.**   The same one, the 9 minute and 20 second video.

10:43:40   20   **Q.**   Which is 9B11, and that image is Government's Exhibit

21   Number 9B2?

22   **A.**   Yes.

23   **Q.**   And then Government's Exhibit Number 19F, what video

24   is that from?

10:43:54   25   **A.**   The 9 minute and 20 second video.

Direct Examination of Detective Staton

1  Q.   Which again is Government's Exhibit 9B11 and the image

2  is Government's Exhibit Number 9B3; is that correct?

3  A.   Yes.

4  Q.   And then the last one is Government's Exhibit

10:44:09   5  Number 19G.  Which video is being -- which video is this

6  showing?

7  A.   The 6 minute and 52 second video.

8  Q.   Which is Government's Exhibit Number 9B6; is that

9  correct?

10:44:23  10  A.   Yes.

11  Q.   And that image, is that Government's Exhibit

12  Number 9B4?

13  A.   Yes.

14  Q.   And that was found in the Galaxy S5 not in a case?

10:44:34  15  A.   Yes, ma'am.

16  Q.   And the other images that were published, were you not

17  able to find a comparison of what videos they came from?

18  A.   No, I was not.

19  Q.   Okay.

10:45:14  20       MS. LEO:  Your Honor, may I have just one moment?

21       THE COURT:  Yes.

22    (Sotto voce discussion between counsel.)

23       MS. LEO:  Your Honor, I'll pass the witness.

24       MR. BENNETT:  No questions, Your Honor.

10:45:23  25       THE COURT:  Detective, you may step down.

```
                     1              THE WITNESS:  (Complying.)

                     2              THE COURT:  Does the government have any other

                     3    evidence to offer?

                     4              MS. LEO:  No, Your Honor.  We don't.

10:45:35             5              THE COURT:  The government rests?

                     6              MS. LEO:  Yes, Your Honor.  The government rests.

                     7              MR. BENNETT:  There is still a question in my

                     8    mind, Your Honor, whether we need to make a motion at this

                     9    point for judgment of acquittal since the Court is

10:45:50            10    actually being asked to acquit on Counts One and Two

                    11    anyway.  In an excess of caution, we ask for a judgment of

                    12    acquittal at this point for the reasons that are stated in

                    13    our brief in support of acquittal.

                    14         Briefly, the statute requires sexual conduct on the

10:46:04            15    part of the child, that the child be engaged in sexual

                    16    conduct; and in none of these videos nor photographs is

                    17    the child engaged in sexual conduct.

                    18              THE COURT:  The Court has reviewed the trial

                    19    brief that Mr. Bennett submitted on this, and the motion

10:46:22            20    for acquittal is denied.

                    21              MR. BENNETT:  Defendant rests, Your Honor.

                    22              THE COURT:  All right.  Does the government wish

                    23    to make any argument?

                    24              MS. LEO:  Yes, Your Honor.  The government does

10:46:34            25    wish to make an argument in regard to this case.  And
```

Closing Statement by the Government

1    because this is -- because this is a stipulated bench

2    trial, we didn't publish all of our exhibits.  At least

3    for Count Two I would like to be able to publish a couple

4    of the KIK chats that go to the distribution count.

10:46:49    5    So in regards to that, Your Honor, as far as the

6    government's case is concerned, the government is asking

7    you to find the defendant guilty of both Counts One and

8    Two.  We believe that we have met our burden of proving

9    him guilty beyond a reasonable doubt.

10:47:04    10    As defense counsel stated and as we stated to the

11    Court in the beginning of this trial, the real issue here

12    is whether or not the defendant produced images or videos

13    that would constitute child pornography; and the

14    government believes that it has met that burden and that

10:47:19    15    the images and videos that the defendant produced were, in

16    fact, child pornography.

17    Your Honor, the defendant was charged with the

18    attempted production as well as the production of these

19    videos and images of Minor Victim 1.  It's the

10:47:32    20    government's belief that all of the images in the videos

21    that the defendant -- that depict Minor Victim 1 where she

22    is undressing and getting in the shower and you see her

23    vaginal area and you see her pubic area, that those all

24    would constitute child pornography and the production of

10:47:51    25    child pornography according to the case law that is in the

1    Fifth Circuit.

2        We also believe, at the very least, Your Honor, that

3    the full-length videos, if you would, or the original

4    videos would be, at the very least, attempted production.

5    We believe they are production of child pornography; but

6    again, he was charged in the attempted production as well

7    as the regular production of child pornography.

8        What we think is the easier thing for the Court to

9    look at is what he did with those cropped images and the

10   slowed-down videos where he edited.  And we believe those

11   show definitely that the defendant produced child

12   pornography in this case.

13       Your Honor, looking at the statute, as defense counsel

14   stated, the definition of child pornography is -- the term

15   "child pornography" for this purpose means any visual

16   depiction which is of the sexually explicit conduct where

17   the production of such visual depiction involves the use

18   of a minor engaged in sexually explicit conduct.

19       The term "sexually explicit conduct" is defined as

20   either sexual intercourse, bestiality, masturbation,

21   sadistic or masochistic abuse or the lascivious exhibition

22   of the genitals or pubic area of any person.

23       And clearly in this case the only thing that it would

24   fall under is the lascivious exhibition of the genitals or

25   pubic area of Minor Victim 1.  We don't have the other

1    categories that are defined in regards to sexually

2    explicit conduct.

3         But what the Court can look at and what other courts

4    have looked at in regards to determining whether or not

10:49:37   5    images and videos are sexually explicit conduct when you

6    have the lewd and lascivious exhibition of the genitals

7    and the pubic area, the Court can take into account the

8    *Dost* factors.

9         In regards to the *Dost* factors, Your Honor, those are

10:49:53   10   whether the focal point of the visual depiction is on the

11   child's genitalia or pubic area, whether the setting of

12   the visual depiction is sexually suggestive in a place or

13   pose generally associated with sexual activity, whether

14   the child is depicted in an unnatural pose or

10:50:08   15   inappropriate attire considering the age of the child,

16   whether the child is fully or partially clothed or nude,

17   whether the visual depiction suggests sexual coyness or

18   willingness to engage in sexual activity, and whether the

19   visual depiction is intended or designed to elicit a

10:50:24   20   sexual response from the viewer.

21        And, Your Honor, this fact or this list is not

22   dispositive.  But these are an aid for the Court to look

23   at in determining whether or not the images or videos are

24   child pornography.  And I would like to look at just a few

10:50:44   25   of the images that we had published for the Court,

Closing Statement by the Government

1    specifically the images of -- I think the easier one would

2    be 9, 7 -- or I think it's 9B2.  Your Honor, this image,

3    which is Government's Exhibit Number 9B2, this image was a

4    cropped image that was found from the video that was the 9

10:51:17    5    minute and 20 length video.

6         And looking at the *Dost* factors -- looking at the *Dost*

7    factors, the first one, whether the focal point of the

8    visual depiction is on the child's genitalia or pubic

9    area, Your Honor, looking at that picture, that is

10:51:31    10    definitely on her vaginal area and on her pubic area.

11         The second one, whether the setting of the visual

12    depiction is sexually suggestive in a place or pose

13    generally associated with sexual activity, Your Honor, in

14    regards to this, it was taken in a bathroom; and some

10:51:48    15    courts have found that bathrooms can be considered

16    sexually suggestive.  They also may not be sexually

17    suggestive.

18         And in looking at the full-length video where Minor

19    Victim 1 was going about her business in her daily

10:52:01    20    routine, that would not be sexually suggestive.  However,

21    the way that the defendant cropped the video to have that

22    up-close shot of Minor Victim 1's vaginal area, that would

23    be sexually suggestive because looking at that picture you

24    can't tell that it came from a bathroom setting.

10:52:20    25         The next one would be whether the child is depicted in

Closing Statement by the Government

```
 1    an unnatural pose.  Again, looking at that picture, it
 2    looks like her hips and her pubic area are jutted out in a
 3    position that is unnatural.  Again, looking at the
 4    full-length video, it's clear that she was just disrobing
 5    and getting in the shower or coming out of the shower.
 6    Actually, I think that was when she was coming out of the
 7    shower and she is towelling off.  So, again, in the
 8    full-length video it doesn't necessarily stand for
 9    something being unnatural.  However, the way that it's
10    cropped, it does make it look unnatural.
11         The fourth factor is whether the child is fully or
12    partially clothed or nude, and in that particular image
13    she is nude.
14         The fifth one is whether the visual depiction suggests
15    sexual coyness or a willingness to engage in sexual
16    activity.  Again, that up-close, cropped shot of her
17    vaginal area and the pubic area, Your Honor, the
18    government's position is that that's why that picture was
19    taken, which again also goes for the sixth factor, whether
20    the visual depiction is intended or designed to elicit a
21    sexual response in the viewer.  And again, I think that
22    the whole reason of that picture was to elicit a sexual
23    response of the viewer.  The defendant took that picture
24    because he has a sexual interest in children, and he took
25    it because he wanted to trade that image and the other
```

Closing Statement by the Government

1    images and videos that he took of Minor Victim 1 with

2    others on the KIK chat group.

3        And, Your Honor, I'll get to that in one second in

4    regards to the distribution and also in regards to his

10:53:51    5    sexual interest in children, which I believe goes toward

6    the fact of why he was doing what he did and goes toward

7    the sixth *Dost* factor.

8        But just in regards to the other images, not only was

9    that one of the images, we also have Government's Exhibit

10:54:10   10    Number 7E, which is a similar photo.  It's a little bit

11    smaller, but it's a similar photo of what we just put up,

12    which was 9B2.

13        Then we have Government's Exhibit Number 9B1, which

14    again the focal point in this -- and we would articulate

10:54:33   15    here with this particular depiction you see her vaginal

16    area from behind and you also can't tell from this image

17    that it came from a bathroom.  We know because we watched

18    the full-length video that it was a shower curtain.  But

19    just looking at this, it appears that she is laying or

10:54:53   20    could be laying on a bed of some sort.

21        And then, in regards to Government's Exhibit

22    Number 9B4, with this particular video, again, you are

23    able to see her genitals.  From the pose and from the

24    full-length video we know that she is getting undressed.

10:55:20   25    But the way that it's cropped, you can't tell that this

Closing Statement by the Government

1   was a bathroom setting.  And again, the focal point is her

2   genitalia.

3       And then in regards to 9B9, that particular video --

4   what is interesting about this particular video, the way

5   that the defendant edited this video and manipulated this

6   video to slow it down, it takes Minor Victim 1 getting

7   undressed to get in the shower into a seductive striptease

8   almost by the way that it's slowed down and that she is

9   now taking her clothes off and moving about in the

10  bathroom.

11      The other thing, Your Honor, just in regards to the

12  focal point of these videos in general, not just to the

13  cropped videos but of all the videos, the defendant went

14  into the bathroom and positioned the camera in such a way

15  to be able to get Minor Victim 1 when she was undressing,

16  when she was using the toilet, and when she was getting in

17  and out of the shower.

18      So we believe that looking at those videos and looking

19  at, especially, the cropped still images that the

20  government pointed out with these particular images that

21  it definitely is child pornography that the defendant

22  produced in regards to this case.

23      Also, with the fact that the defendant has a sexual

24  interest in children, which goes towards the sixth factor

25  of the *Dost* factors, with the response in the viewer, it's

Closing Statement by the Government

1   clear that the defendant has a sexual interest in

2   children.  It's clear because not only did Detective

3   Staton find the child pornography that he had of those

4   images and videos of Minor Victim 1, he also found regular

10:57:25   5   child pornography.

6        He found eight videos of child pornography on the

7   defendant's Galaxy S5 that was in a case, and he found 24

8   images and 78 videos of child pornography in the Galaxy S5

9   that wasn't in a case.

10:57:38   10        And as the Court heard the descriptions of the child

11   pornography, they were children engaged in various sex

12   acts; and, Your Honor, the defendant in his post-Miranda

13   interview stated that he was part of this KIK daddy's

14   daughter group where he would have to trade images with

10:57:56   15   other individuals.  And so that was the purpose of why he

16   was taking these pictures and these images.

17        Another thing to highlight, Your Honor, in regards to

18   why the defendant has a sexual interest in children, which

19   why these images and the videos that he was creating and

10:58:12   20   he was taking and producing why they are, in fact, child

21   pornography is because he was part of this KIK group where

22   he was communicating with other like-minded individuals

23   and they were trading these images of their purported

24   stepdaughters.  We don't know if these other individuals

10:58:31   25   really had stepdaughters or whatnot, but that's what they

Closing Statement by the Government

1  were holding themselves out to.

2        And I would like to just show the Court some of those

3  KIK chats because it also goes along with the Count Two,

4  the distribution of child pornography, because the only

10:58:46  5  images that were distributed are the images of Minor

6  Victim 1.

7        And in regards to that, can we please put up

8  Government's Exhibit Number 1D, Page 2.  The first chat in

9  the KIK group is with an individual Burning Gundam.  And

10:59:09  10  the first question that Burning Gundam starts off with is

11  "Does your stepdaughter play any sports?"

12        And the defendant responds, "All sports."

13        And as they go down and they are communicating,

14  Burning Gundam asks, "Do you sniff her panties?"  That's

10:59:31  15  not something that a normal individual would ask but

16  something, rather, that someone who has a sexual interest

17  in children.

18        And the defendant responds, "Yes, wonderful."

19        And then, "Has she caught on to you?"

10:59:45  20        And the defendant responds, "No."

21        Then Burning Gundam says, "Hope my stepdaughter has a

22  sleepover tomorrow.  We stay in an apartment.  So there

23  will be many girls to choose from."

24        And the defendant says, "Laugh out loud, awesome."

11:00:01  25        Again, that shows that there is a sexual interest in

Closing Statement by the Government

children, which is why he would be creating the child
pornography that he did create.

In regards to the next chat, it's one with Chuck
Richards.  With this one there is an exchange of regular
pictures of two girls.  And then the defendant sends this
other picture of Minor Victim 1 in which, again, because
we have seen these pictures, we know that that's a shower
curtain in the back.  But looking at this from the way
that it's sent, it appears that she -- that Minor Victim 1
is on some sort of a bed or something or a couch, perhaps,
but it looks like she is laying down, not standing up in
front of a shower.

The next communication is with Crave Man, and on that
particular communication Crave Man asks, "Have you ever
played with her?"

And the defendant responds, "Not yet.  Working on it."
And then he sends another image where you see Minor
Victim 1's butt and anus are the focal point of the image.

Crave Man responds, "Wow.  How did you get that?"

The defendant says, "Camera in clothes hamper."

And then Crave Man says, "Any of the front?"  And
that's when the defendant sends that picture of the
close-up of Minor Victim 1's vaginal area and pubic area.

Crave Man responds, "Nice little bush for 14.  Mmmm."

And the defendant says, "You got any?"

1     And Crave Man then sends a picture of a female and

2  goes on to say that she is 16.  And then the communication

3  continues.  And then Crave Man asks for him to send more

4  pictures, and the defendant sends two regular pictures of

11:02:28  5  Minor Victim 1.

6     The next communication on KIK is with Miss My Texas

7  PYT; and that starts off with Miss My Texas PYT asking,

8  "Send when you get a chance, bro."

9     And the defendant responding, "Just got off.  Give me

11:02:47  10  about 30 minutes."

11     And then it looks like there were some videos that

12  were sent by Miss My Texas PYT.

13     And then eventually the defendant sends a picture of

14  Minor Victim 1.

11:03:03  15     And then Miss Texas PYT -- excuse me, Miss My Texas

16  PYT says, "You active with her?"

17     And the defendant says, "Working on it."

18     And then Miss My Texas PYT says, "Any sexy pics of

19  yours?  I got a few for trade."

11:03:23  20     And then the defendant sends a picture of Minor

21  Victim 1 where she is standing in front of the shower

22  curtain and you see her buttocks, and her buttocks is the

23  focal point of the image.

24     And then the next conversation is with Play Time, and

11:03:46  25  that's when the defendant -- Play Time asks, "Yes.  You

1    first.  Have random ones."

2         And the defendant sends a picture of Minor Victim 1 of

3    her torso, of her breasts, and her vaginal area.

4         And Play Time responds back with a facial shot of a

11:04:05    5    girl.  And the defendant responds, "Lovely."

6         And Play Time, "Mmmm, yes."

7         And then the defendant sends another picture of Minor

8    Victim 1 who, again, you see her breasts.  You see a towel

9    over her lap, and you see what we know is part of the

11:04:26   10    toilet.

11         And then the defendant responds -- or, excuse me, Play

12    Time responds with a naked picture, a blurry naked picture

13    of a girl.

14         And then the defendant responds with another picture

11:04:42   15    of Minor Victim 1 of her torso, and it looks like she is

16    wet from the shower.  And you see her breasts and her

17    vaginal area.

18         And then it says, "Naw, just my spy cam."  And a

19    close-up of that, of her vagina and pubic area.

11:05:02   20         Then there is a communication with Sand Storm where

21    Sand Storm says, "Hi.  Wanna share?"

22         And the defendant says, "Sure."

23         Sand Storm says, "Go for it.  I'll match."

24         Defendant sends the picture of Minor Victim 1 in front

11:05:17   25    of the shower curtain where you see where the focal point

1    is of her buttocks.

2         And then there is an exchange where Sand Storm sends a

3    picture.  And then the defendant discusses the spy cam,

4    and Sand Storm says, "Nice.  Go on.  I'll match vids or

11:05:40   5    pics."  And the defendant then sends another picture of

6    Minor Victim 1 where it's of her torso, and you see her

7    vagina and her breasts.

8         So, Your Honor, in regards to the defendant's

9    collection of other child pornography under the *Dost*

11:06:11   10   factors and because he was communicating with these

11   like-minded individuals on KIK where he was trading and

12   discussing wanting to play or be active with his

13   14-year-old stepdaughter who is Minor Victim 1, we believe

14   that shows the defendant has a sexual interest in children

11:06:32   15   and that was the purpose for him to create these visual

16   depictions both, again, of the videos and then when he

17   edited the videos, slowed them down and created those

18   still shots from those videos that he was either producing

19   the child pornography or, at the very least, attempting to

11:06:51   20   produce the child pornography with his actions.

21        And furthermore, as far as the distribution, what he

22   was sending to those individuals, especially on that --

23   the images where he sent of the zoomed-in vaginal area of

24   Minor Victim 1, it's the government's position that proves

11:07:10   25   that he distributed child pornography of Minor Victim 1.

1    And, therefore, the Court should find him guilty in both

2    counts.

3        I know that defense counsel raised the argument that

4    the child has to be engaged in some sort of a sex act.

11:07:23    5    And, Your Honor, in Fifth Circuit precedent that's not the

6    case.  The *United States v. McCall*, *United States v.*

7    *Traweek,* and *United States v. Steen* do not hold for that

8    proposition.

9        I think that this case is aligned with *United States*

11:07:40    10    *v. McCall* in regards to a similar fact pattern where the

11    defendant recorded his niece showering and then took that

12    recording and zoomed in and made still images of that.

13    And in that particular case, it went up to the Fifth

14    Circuit; and it was affirmed on appeal.

11:08:00    15        And so, Your Honor, we feel that based on the law and

16    based on the facts in this particular case, that there is

17    enough for the Court to find the defendant guilty of those

18    two counts as charged.  Thank you.

19            THE COURT:  Thank you, Counsel.

11:08:13    20    Mr. Bennett, do you have anything to add to your brief

21    in support of acquittal?

22            MR. BENNETT:  I do, if I may.

23            THE COURT:  Sure.

24            MR. BENNETT:  May I?

11:08:23    25            THE COURT:  Yes.

Closing Statement by the Defendant

1        MR. BENNETT:  Your Honor, I think if it were not
2   for *Dost* and the cases adopting *Dost*, that this Court
3   would be looking at the language of the statute and
4   saying, well, how is this minor engaged in sexual conduct
11:08:35    5   because that's the language that Congress used.

6        I agree with my learned colleague that the Fifth
7   Circuit has adopted the *Dost* factors and that the Court --
8   the jury would be instructed on the *Dost* factors.  And so
9   the Court should consider the *Dost* factors.  And the *Dost*
11:08:50   10   factors, I agree, again, allow conviction in this case.
11   They do not, however, require it.

12        The simple manner of disposing of this case so that
13   the Court of Appeals and the appellate counsel are saved
14   the trouble of fighting this issue would, of course, be to
11:09:08   15   find Mr. Taylor not guilty on Counts One and Two, convict
16   him on Counts Three or Four, proceed to sentencing on
17   those counts; and the Court can craft a sentence that
18   satisfies the law just based on those two statutes, which
19   are a ten-year statute and a five-year statute.

11:09:23   20        Other than that, Your Honor, the problem with *Dost* is
21   that it focuses on the visual depiction rather than the
22   conduct of the child; and the statute focuses on the
23   conduct of the child.  And I'm not asking the Court not to
24   follow Fifth Circuit precedent; but if the Court were to
11:09:49   25   simply say -- if it's in the Court's mind to say the

Ruling of Court

statute appears to say what the statute says and I believe
that Congress meant what Congress said there rather than
trying to guess that what Congress actually meant to say
was to use a minor to create sexually explicit material,
which is the way that *Dost* interprets it, that nobody
could gainsay it and it would never see the Fifth Circuit
nor the Supreme Court.

I know it's a tough case.  They are bad facts.  I
mean, they are -- we have daughters and these are bad
facts and we don't want to think of our daughters being
treated this way.

And Congress wrote a bad statute; and one way or
another, that's going to get sorted out in the coming
years.  And if I have to be the one to sort it out, I'm
happy to be the one to sort it out.  But for Mr. Taylor's
sake, I would rather I didn't have to do that.  Thank you.

THE COURT:  All right.  Thank you, Mr. Bennett.
Any rebuttal from the government?

MS. LEO:  Your Honor, just what I previously
argued that the Fifth Circuit allows for the courts to
look at the *Dost* factors; and under the *Dost* factors and
Fifth Circuit precedent, we ask that you find the
defendant guilty.  Thank you.

THE COURT:  All right.  If this were a jury
trial, we would be charging them right now; and they would

Ruling of Court

1    be going off to deliberate.  I have not done a criminal

2    bench trial before.  I assume I need to make findings of

3    facts and conclusions of law like I would in a civil bench

4    trial.

11:11:21   5    Do you have any experience with this?

6    MR. BENNETT:  I don't, Your Honor.  Since it is a

7    law question that we're trying it on, if there is a guilty

8    verdict, I would like conclusions of law so that we have

9    something to show Court of Appeals what the thinking was;

11:11:41  10    but I don't think it's required.  I think that all that is

11    required is guilty or -- I find you guilty or I find you

12    not guilty.

13    THE COURT:  Okay.  All right.  I'm going to

14    prepare something.  It may not -- it may be about as bare

11:11:57  15    bones as a jury verdict form would be or -- I mean, I'll

16    certainly go into some law on the legal question that's

17    been presented to the Court.

18    I anticipate -- the defendant has already pleaded

19    guilty to Counts Three and Four.  I anticipate finding the

11:12:17  20    defendant guilty to Counts One and Two, as well; but I

21    will -- I'll prepare some findings and conclusions to make

22    that announcement in.

23    And then, Mr. Taylor, anticipating -- I mean, whether

24    the Court ultimately finds you guilty of Counts One and

11:12:42  25    Two and Three and Four, which you have pleaded guilty to.

Ruling of Court

1   You have pleaded guilty to Three and Four.

2        And so that means after today and after the Court has

3   ruled, a written presentence report will be prepared by

4   probation to assist me in sentencing.  You will be asked

11:13:00   5   to give information for that report; and your attorney may

6   be present to assist you, if you wish.

7        The Court will permit you and your attorney to read

8   the presentence report and to file any objections to that

9   report before your sentencing hearing.  And then you and

11:13:13   10  your attorney will have an opportunity to speak on your

11  behalf at your sentencing hearing.

12       Other than that, the evidence is in.  And I guess

13  y'all can await the Court's written ruling, and I'll get

14  it out as quickly as I can.  Can you think of anything

11:13:31   15  else we need to do today?

16            MR. BENNETT:  No, Your Honor.  Thank you.

17            MS. LEO:  Your Honor, just one thing as far as

18  the child pornography.  Do you want us to keep -- usually

19  we will keep it in our possession.  Do you want us to keep

11:13:48   20  it in our possession, or do you want it to look at it?

21  And if so, we can get you -- I guess what we use is

22  usually a stand-alone computer so that way you don't have

23  to worry about putting it on any network device.  So I

24  guess -- I don't know how the Court wants to handle that.

11:14:07   25            THE COURT:  If I end up deciding that I need to

Ruling of Court

1   look at anything more than what I have seen in trial

2   today, George will reach out to y'all and let you know;

3   and we'll make some kind of arrangement for that, if that

4   works for everybody.

11:14:19   5       Let me say that initially I wasn't pleased to hear

6   that there was a waiver of the -- a waiver of jury trial

7   and we were going to be doing a bench trial.  But in

8   hindsight, I think I want to commend the lawyers for both

9   sides on coming up with this idea for handling this,

11:14:38  10   especially in light of the legal issue that the defendant

11   would like to present to the Court of Appeals and possibly

12   to the Supreme Court.

13       By coming up with this solution, y'all saved 70 people

14   from having to come down in the middle of a spike in the

11:15:01  15   virus and to deal with a case that people typically find

16   pretty unpleasant to deal with and you saved a jury of 12

17   people from having to go through a trial on this.  And in

18   doing all that, I still think that the defendant's rights

19   have been thoroughly preserved.

11:15:25  20       You have an excellent lawyer, Mr. Taylor.  He is one

21   of the best.  And I think that the solution that he and

22   the government came up with today to get this issue

23   presented to the Court, to get your case presented to what

24   I consider to be a fair factfinder, I think was a good

11:15:45  25   solution.

1    And I want to commend both sides for that.  And we
2  were able to do it in half a day.  So that's good, too.
3    Not hearing anything else that the Court needs to take
4  up today, the Court will take judgment under advisement,
5  get it out as quickly as I can; and otherwise, the Court
6  stands in recess.  Have a good day.
7         ALL COUNSEL:  Thank you, Your Honor.
8         THE MARSHAL:  All rise.
9    (Proceedings concluded at 11:16 a.m.)
10  *Date:  August 13, 2022*
11                **COURT REPORTER'S CERTIFICATE**
12     *I, Laura Wells, certify that the foregoing is a*
13  *correct transcript from the record of proceedings in the*
14  *above-entitled matter.*
15              _____/s/ Laura Wells_____
16           *Laura Wells, CRR, RMR*
17
18
19
20
21
22
23
24
25

11:16:02